IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| CHERRY BARNETT, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:14-cv-656-TFM |
| | ) | [wo] |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
|     Defendant. | ) | |

## **MEMORANDUM OPINION**

On March 2, 2011, Cherry J. Barnett ("Plaintiff" or "Barnett") applied for supplemental security income under Title XVI and disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"). Plaintiff alleged a disability onset date of January 1, 2010. (Tr. 136-48). Barnett timely filed for and received a hearing before an administrative law judge ("ALJ") who rendered an unfavorable decision on November 9, 2012. (Tr. 16-35). The Appeals Council denied Plaintiff's request for review. (Tr. 1-6). As a result, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner"). *Id.* Judicial review proceeds pursuant to 42 U.S.C. § 405(g), and 28 U.S.C. § 636(c). After careful scrutiny of the record and briefs, for reasons herein explained, the Court AFFIRMS the Commissioner's decision.

## I. NATURE OF THE CASE

Barnett seeks judicial review of the Commissioner's decision denying her application for disability insurance benefits and supplemental security income. United States District Courts may conduct limited review of such decisions to determine whether they comply with applicable law and are supported by substantial evidence. 42 U.S.C. § 405. The Court may affirm, reverse and remand with instructions, or reverse and render a judgment. *Id*.

## II. STANDARD OF REVIEW

The Court's review of the Commissioner's decision is a limited one. The Court's sole function is to determine whether the ALJ's opinion is supported by substantial evidence and whether the proper legal standards were applied. *See Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

"The Social Security Act mandates that 'findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive.'" *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (quoting 42 U.S.C. §405(g)). Thus, this Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). Substantial evidence is more than a scintilla ─ i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d

842 (1971)); *Foote*, 67 F.3d at 1560 (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the evidence preponderates against the Commissioner's findings. *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (quoting *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)). The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560 (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The Court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]," but rather it "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (quoting *Bloodsworth*, 703 F.2d at 1239).

The Court will also reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). There is no presumption that the Commissioner's conclusions of law are valid. *Id.*; *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991) (quoting *MacGregor*, 786 F.2d at 1053).

### III. STATUTORY AND REGULATORY FRAMEWORK

The Social Security Act′s general disability insurance benefits program ("DIB") provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence.[1]  *See* 42 U.S.C. § 423(a).  The Social Security Act's Supplemental Security Income ("SSI") is a separate and distinct program.  SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line.[2]  Eligibility for SSI is based upon proof of indigence and disability.  *See* 42 U.S.C. §§ 1382(a), 1382c(a)(3)(A)-(C).  However, despite the fact they are separate programs, the law and regulations governing a claim for DIB and a claim for SSI are identical; therefore, claims for DIB and SSI are treated identically for the purpose of determining whether a claimant is disabled.  *Patterson v. Bowen*, 799 F.2d 1455, 1456 n. 1 (11th Cir. 1986).  Applicants under DIB and SSI must provide "disability" within the meaning of the Social Security Act which defines disability in virtually identical language for both programs.  *See* 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a).  A person is entitled to disability benefits when the person is unable to

> Engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result

---

[1] DIB is authorized by Title II of the Social Security Act, and is funded by Social Security taxes. *See* Social Security Administration, Social Security Handbook, § 136.1, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

[2] SSI benefits are authorized by Title XVI of the Social Security Act and are funded by general tax revenues.  *See* Social Security Administration, Social Security Handbook, §§ 136.2, 2100, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner of Social Security employs a five-step, sequential evaluation process to determine whether a claimant is entitled to benefits.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2010).

> (1) Is the person presently unemployed?
>
> (2) Is the person's impairment(s) severe?
>
> (3) Does the person's impairment(s) meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?[3]
>
> (4) Is the person unable to perform his or her former occupation?
>
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

The burden of proof rests on a claimant through Step 4.  *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004).  Claimants establish a prima facie case of

---

3 This subpart is also referred to as "the Listing of Impairments" or "the Listings."

qualifying for disability once they meet the burden of proof from Step 1 through Step 4. At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Id*. at 1238-39. RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence. *Id*. It also can contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id*. at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines[4] ("grids") or hear testimony from a vocational expert ("VE"). *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Id.* at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*.

### IV.  ADMINISTRATIVE FINDINGS AND CONCLUSIONS

Plaintiff was 46 years old on her alleged onset date. (Tr. 29). The ALJ concluded that Plaintiff has a limited education and is able to communicate in English. (Tr. 29). Plaintiff has past work experience as a childcare attendant, fast food worker and

---

4 *See* 20 C.F.R. pt. 404 subpt. P, app. 2; *see also* 20 C.F.R. § 416.969 (use of the grids in SSI cases).

electronics tester.  (Tr. 29).  Earning records show that she worked regularly between 1987 and 2009.  (Tr. 149-62).  In February 2005, Barnett stepped in a pot hole, twisted her left ankle and fell.  (Tr. 250).  She was initially treated for the left ankle injury with a short leg cast for several weeks.  (Tr. 243).  Barnett also injured her back.  She was treated for low back pain with radiation down the left leg in late 2005.  The pain was accompanied by intermittent left leg numbness and weakness.  (Tr. 250).  An October 3, 2005, CT/Myelogram of the lumbar spine showed significant facet arthropathy with narrowing of the nerve canal.  (Tr. 248).  In October 2005, physical therapy, weight loss and possible injections in the future were recommended.  (Tr. 248).

After the injury Barnett returned to work.  In August 2008, Barnett reported left knee pain and left lower extremity swelling.  On examination, her left knee had edema and was tender to palpitation.  She was treated with Flexeril and Naproxen by her primary care physician, Hiren K. Patel, MD.  (Tr. 276).  In February 2009, she reported low back pain that radiated into her left leg.  (Tr. 269).  Throughout 2009, 2010, and 2011, Barnett saw Dr. Patel for other chronic conditions that included, markedly high blood pressure and high cholesterol.  (Tr. 256-94).

During this time Barnett also suffered from morbid obesity.  She weighed 322 pounds in February 2009, 330 pounds in July 2009, 324 pounds in February 2010, and by September 2010, Barnett weighed 340 pounds.  (Tr. 267, 321-22).

On April 13, 2011, Alphonza Vester, MD examined Barnett for the State agency. (Tr. 295-99).  She described constant low back pain that radiated into the left side down her leg to her knee.  She had episodic left thigh numbness, bilateral knee pain with edema

(right, more than left), low energy and leg cramps. (Tr. 296-97). On examination Barnett was 66 inches tall and weighed 328 pounds. She had pretibial edema, mildly increased left knee temperature. (Tr. 297). Tenderness to palpitation was noted of her left thumb, third right finger, lumbar spine, muscles, and both knees. (Tr. 297-98). Dr. Vester noted Barnett was "limited by obesity" and obesity also caused decreased range of motion of the hips. (Tr. 297). She had a "slow antalgic gait" and she could not heel or toe walk, nor could she perform the squat and rise. (Tr. 298). Dr. Vester's diagnoses included lumbar spondylosis, osteoarthritis of the knees, morbid obesity, allergic rhinitis, osteoarthritis of the hands, and high blood pressure. The lumbar spondylosis and bilateral osteoarthritis of the knees were "moderately limiting" for Barnett. (Tr. 298). Morbid obesity also "limits her to a moderate extent." (Tr. 298).

State agency non-examining physician, Robert Heilpern, MD., reviewed the record and completed a Residual Functional Capacity Assessment on May 11, 2011. (Tr. 300-07). Dr. Heilpern opined that Barnett should be able to lift or carry 10 pounds occasionally and frequently. She should be able to stand and/or walk at least 2 hours and sit 6 hours out of an 8-hour workday. (Tr. 301). She should not climb ladders, ropes or scaffolds, and she should avoid hazardous machinery and work at unprotected heights. (Tr. 302, 304).

On November 9, 2001, Barnett was evaluated for a possible sleep study. She reported severe daytime sleepiness for four years. (Tr. 450). On examination she weighed 344 pounds, her Body Mass Index ("BMI') was greater than 54, and she had

mild diffuse thyroidmegally. (Tr. 451). She was diagnosed with possible obstructive sleep apnea. (Tr. 452).

On March 23, 2012 and April 13, 2012, Barnett saw orthopedist, Dr. J. Edwin Lyle, for evaluation of back and knee pain. (Tr. 456-57). On March 23, 2012, Barnett described back pain which started years before when she twisted her ankle in a pot hole. She had pain which radiated down the left side and episodic left thigh numbness. (Tr. 457). On examination she had reduced range of lumbar motion. Dr. Lyle reported that she has a "very chronic" pain issue and that a "pain management doctor might need to be an option down the line" and he recommended that she go to supervised physical therapy to work on her flexibility. (Tr. 457). His Impression was "chronic low back pain with increasing symptoms and episode of left leg paresthesias" he noted that "she has very poor and limited range of motion with flexion, extension and rotation." (Tr. 457). On April 13, 2012, the focus was bilateral knee pain and Dr. Lyle noted that her low back pain "may be a little bit better". (Tr. 456). Dr. Lyle stated that imaging of the knees "revealed that she has essentially bone-on-bone medial compartment arthritis of both knees."and he recommended weight loss and stated that as a result of her weight she is now "not a candidate for a knee replacement." (Tr. 456).

## VI.  ISSUES

Barnett raises two issues for judicial review:

(1) Did the administrative law judge err in his finding concerning the residual functional capacity by failing to give proper weight to the opinion of the Vocational Rehabilitation counselor?

(2) Did the administrative law judge err in his finding concerning the residual functional capacity by failing to address the combined impact of Barnett's obesity with her other severe impairments?

## VII.  ANALYSIS

Plaintiff first argues that the ALJ erred in his RFC assessment because he failed to give the evaluating vocational rehabilitation counselor, Doreene Carlisle, MS, CRC, proper weight.  The record shows that Carlisle requested and reviewed medical records from Plaintiff's primary care physicians including Dr. Patel, Dr. Parnjal, and from her cardiologist, Dr. Aikens.  (Tr. 473-75).  In a letter to Plaintiff dated July 20, 2012, Carlisle informed Barnett that her case was being closed due to the severity of her disability and specifically stated Plaintiff "cannot benefit from the provision of vocational rehabilitation services in terms of an employment outcome."  (Tr. 473).  Carlisle further opined that Plaintiff's "multiple conditions . . .  will not allow her to complete the necessary 10 day evaluation".  Thus "[s]he cannot benefit from Vocational Rehabilitation Services in terms of an employment outcome."  She recommended that "Barnett proceed with the process of applying for Social Security Benefits."  (Tr. 475).

The ALJ stated that he "carefully considered" Carlisle's conclusion but that he afforded it "limited weight" for three reasons.  First, the ALJ found Carlisle's conclusion to be "inconsistent with the claimant's presentation upon routine examination".  Second, the ALJ found Carlisle's conclusion to be inconsistent with Plaintiff's "ability to engage in activities of daily living".  Third, the ALJ discounted Carlisle's opinion on the basis that it "concerns only a vocational, not medical factor."  (Tr. 28).  The law is clear;

"[a]lthough the testimony of such experts is not of talismanic importance; it is not to be simply disregarded." *Fields v. Harris,* 498 F. Supp. 478, 491 (N.D. Ga. Sept.5, 1980)**.** The record demonstrates that the ALJ in this case did not disregard Carlisle's conclusion; rather he "carefully considered" it and stated three reasons, based upon a review of the record, as to why he gave it "limited weight". (Tr. 28). Further, the Court has independently reviewed the record and concludes that the ALJ's findings discrediting Carlisle's conclusion are supported by substantial evidence. *Miles,* 84 F.3d at 1400. Accordingly, Barnett's first argument does not in and of itself present a basis for remand or reversal.

The Court will now turn its attention to Barnett's second argument for reversal or remand. Plaintiff claims that the ALJ erred in failing to address the combined impact of Barnett's obesity with her other severe impairments when considering Plaintiff's residual functional capacity. An RFC assessment is used to determine the claimants' capacity to do as much as they are possibly able to do despite their limitations. *See* 20 C.F.R. § 404.1545(a)(1) (2010). An RFC assessment will be made based on all relevant evidence in the case record. *Id.*; *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997).

At an ALJ hearing, "the [ALJ] is responsible for assessing [the claimant's] residual functional capacity." 20 C.F.R. § 404.1546(c) (2010). The claimant is "responsible for providing the evidence [the ALJ] will use to make a finding about [the claimant's] residual functional capacity." 20 C.F.R. § 404.1545(a)(3) (2010). The ALJ is "responsible for developing [the claimant's] complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable

effort to help [the claimant] get medical reports from [their] own medical sources. *Id.; Holladay v. Bowen,* 848 F.2d 1206, 1209-10 (11th Cir. 1988) (The ALJ is not required to order a consultative examination unless the record establishes it is necessary to render a fair decision). The ALJ's finding must be supported by substantial evidence. "Substantial evidence is less than a preponderance, but rather such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Moore v. Barnhart,* 405 F.3d 1208, 1211 (11th Cir. 2005)(citations omitted).

The question before the Court is whether the ALJ's residual functional capacity finding is supported by the substantial evidence in the record as a whole. *Winschel v. Comm. of Soc. Sec.,* 631 F. 3d 1176, 1178 (11th Cir. 2011). A residual functional capacity is not based on any one piece of evidence, but rather on all of the evidence of record – including a claimant's hearing testimony, her other statements, the examination findings, the medical source opinions, and anything else that tends to bear on the claimant's allegations of disabling symptoms. 20 C.F.R. § 404.1545(a); *Moore v. Barnhart,* 405 F. 3d 1208, 1212-13 (11th Cir. 2005).

The Court has carefully and independently reviewed the medical evidence of record and concludes that the ALJ's residual functional capacity is supported by substantial evidence, even considering Carlisle's opinion.. (Tr. 475). Indeed, as the law requires the ALJ specifically addressed Carlisle's opinion, *see Fields*, 498 F. Supp at 49, and listed three reasons for discounting it. (Tr. 28). Furthermore, the ALJ specifically discussed and considered Barnett's obesity and its affect on her ability to work. Indeed,

the ALJ recognized Plaintiff suffered from "morbid obesity" but that Plaintiff's treatment notes indicate that "despite her obesity, the claimant was able to move around generally well and sustain consistent function."  (Tr. 29) The ALJ cited examinations dated February 2010, September 2010, April 2011 and March and June 2012 and concluded that these "revealed normal gait and range of motion with no motor sensory deficits (Exhibits 4F, 7F and 14F) despite her increased body mass." *Id*.  Additionally, the ALJ concluded "that the medical evidence fails to indicate that the claimant's obesity has lead to or complicated chronic diseases of the cardiovascular, respiratory, or musculoskeletal body systems or that it has imposed greater limitations than those inherent in the above residual functional capacity for sedentary work." (Tr. 29)  The ALJ also concluded that Barnett's "daily activities . . . are fully consistent with the residual functional capacity" for sedentary work.  (Tr. 29).  Thus, the Court concludes that the Plaintiff's second argument for reversal fails as well.  Accordingly, the Court concludes that the Commissioner's decision is due to be affirmed.

## VIII. CONCLUSION

Pursuant to the findings and conclusions detailed in this Memorandum Opinion, the Court concludes that the ALJ's non-disability determination is supported by substantial evidence and proper application of the law. Accordingly, the Court concludes that the Commissioner's decision is due to be affirmed.  A separate judgment is entered herewith.

DONE this 17th day of December, 2015.

/s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE